UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Application of BM Brazil 1 Fundo de Investimento em Participações Multistratégia, BM Brazil 2 Fundo de Investimento em Participações Multistratégia, and ANRH Cooperatief U.A., for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding | Misc. Case No.   1:23-mc-208 |

**DECLARATION OF KEVIN D. BENISH IN SUPPORT OF *EX PARTE* APPLICATION FOR AN ORDER PURSUANT TO 28 U.S.C. § 1782**

**Kevin D. Benish**, hereby declares and says, pursuant to 28 U.S.C. § 1746, as follows:

1. I am an associate with the firm of Holwell Shuster & Goldberg LLP, counsel for BM Brazil 1 Fundo de Investimento em Participações Multistratégia ("FIP1"), BM Brazil 2 Fundo de Investimento em Participações Multistratégia ("FIP2"), and ANRH Cooperatief U.A (collectively, "Applicants"). I submit this declaration in connection with Applicants' request for an Order Pursuant to 28 U.S.C. § 1782 to conduct discovery for use in a foreign proceeding (the "Application"). Except as otherwise indicated, the facts stated in this declaration are true to the best of my knowledge, information, and belief, and are based upon my own personal knowledge or information and materials provided to me by my clients or their UK counsel.

**I.     THE ENGLISH PROCEEDING**

2. On May 27, 2022, Applicants brought suit against Sibanye Stillwater and its Brazilian subsidiary, Sibanye Brazil (the "Sibanye Entities") in the High Court of Justice of England and Wales ("English Court") for breach of contract (the "English Proceeding"). The following paragraphs summarize the contentions in the pleadings in the English Proceeding. Attached hereto as **Exhibit 1** is a true and correct copy of the Re-Amended Particulars of Claim (analogous to a

Complaint) in the English Proceeding. Attached hereto as **Exhibit 2** is a true and correct copy of the Amended Defence of Defendants Sibanye BM Brazil Pty Ltd. and Sibanye Stillwater Limited (analogous to an Answer) in the English Proceeding.

3. On October 26, 2021, Applicants entered into two Share Purchase Agreements ("SPAs") with Sibanye Stillwater and Sibanye Brazil, through which FIP1 and FIP2 agreed to sell their shares in two companies that each owned a Brazilian mine, to Sibanye Brazil for $1.2 billion. Sibanye Stillwater guaranteed Sibanye Brazil's performance under the SPAs.

4. Under the SPAs, the Sibanye Entities could terminate the SPAs if a "Material Adverse Effect" occurred between the execution of the SPAs and the date of the closing ("Closing Date"). The SPAs defined a Material Adverse Effect as "any change, event or effect that . . . would reasonably be expected to be material and adverse to the business, financial condition, results of operations, the properties, assets, liabilities or operations of the [Serrote Mine or Santa Rita Mine]. . . ." In addition, the SPAs provided for exclusive remedies in the case of breach, unless the breach was caused by "wilful misconduct" of the breaching party.

5. On November 9, 2021, a geotechnical event allegedly occurred at the Santa Rita Mine (the "Geotechnical Event"), which is claimed to have resulted in a localized fracture in part of the pit wall that accounted for less than one percent of the total surface area of the mine. Steps were taken to remedy the fracture and mining resumed within 24 hours of the Geotechnical Event.

6. On or around November 15, 2021, expert representatives of Sibanye Brazil became aware of the alleged Geotechnical Event, and Applicants allege that on November 16, 2021 these expert representatives visited to the Santa Rita Mine to inspect the site. According to the Re-Amended Particulars of Claim, the expert representatives' post-site visit report described the

Geotechnical Event as a risk that was to be anticipated in mature mining operations, suggesting that Sibanye Brazil's experts did not view the Geotechnical Event as material.

7. The Closing Date for the transaction was initially set for January 4, 2022 but was later extended by the parties to January 7, 2022. On December 31, 2021, Sibanye Brazil requested an additional extension to January 14, 2022 to allow it to review the Santa Rita Mine's 2022 budget. FIP1 and FIP2 ultimately agreed to the extension but cautioned that they would not grant any further extensions beyond January 14, 2022. Although Applicants performed their pre-closing obligations under the SPAs, the Sibanye Entities failed to close by January 14, 2022.

8. On January 24, 2022 and January 27, 2022, Sibanye Brazil sent letters to Applicants purporting to terminate the SPAs. Sibanye Brazil claimed that it had discretion to terminate the SPAs because the Geotechnical Event constituted a Material Adverse Effect. In light of the Sibanye Entities' failure to close and their breach of the SPAs, FIP1 and FIP2 lawfully terminated the SPAs on February 3, 2022. That same day, Applicants demanded that Sibanye Stillwater pay all sums owed by Sibanye Brazil under the SPAs, which Sibanye Stillwater subsequently refused.

9. As a part of this English Proceeding, Applicants bring claims against the Sibanye Entities for breaching the SPAs by failing to close the transaction by the Closing Date. As detailed in the Re-Amended Particulars of Claim, Applicants assert that the Sibanye Entities' breach was the result of their wilful misconduct because, among other reasons, the Sibanye Entities lacked any reasonable basis to believe the Geotechnical Event was a Material Adverse Effect.

10. The Sibanye Entities claim that they did not breach the SPAs because the Geotechnical Event was a Material Adverse Effect, Applicants failed to satisfy certain conditions precedent, or closing did not occur on or before the contractual outside date of January 14, 2022, thereby allowing the Sibanye Entities to terminate the SPAs at their discretion. For these same reasons,

the Sibanye Entities argue their breach was not the result of willful misconduct or, at the very least, that they had a reasonable basis to believe the Geotechnical Event was a Material Adverse Effect. Applicants contend, however, that the Sibanye Entities used the Geotechnical Event as pretext to terminate the SPAs in circumstances where they wished to do so for unrelated reasons.

## II. DISCOVERY REQUESTED IN SUPPORT OF THE ENGLISH PROCEEDING

11. In support of their claims, Applicants seek documentary and deposition testimony concerning the transaction from Moelis & Company LLC ("Moelis") and Moelis employees Patrick Loftus-Hills ("Loftus-Hills") and Ashley Chen ("Chen") (collectively, "Respondents") for use in and in aid of the English Proceeding.

12. I have reviewed documents provided to me by Applicants regarding Respondents' participation in the transaction. Moelis served as the Sibanye Entities' financial advisor for the transaction until at least Sibanye Brazil's January 27, 2022 termination letter. My understanding is that Moelis had at least six employees on its transaction team for the Sibanye Entities ("Moelis Team"), and I have been informed that Loftus-Hills and Chen were senior members of the Moelis Team and were responsible for advising the Sibanye Entities regarding the transaction. At the time, Loftus-Hills was a managing director at Moelis, specializing in commercial and institutional banking with respect to the mining sector. I understand that Loftus-Hills served as the Moelis Team's main point of contact with the Sibanye Entities' leadership and, as a result, he was regularly involved in high-level meetings and phone calls regarding the transaction and its closing. I understand that Chen's role on the Moelis Team was that of Vice President with responsibility for accounting and auditing, and that he also communicated with members of the Sibanye Entities regarding the transaction and closing.

13. As the Sibanye Entities' financial advisor, Moelis should and will likely possess material documents and information related to the claims in the English Proceeding, including but not limited to the Sibanye Entities' valuation of the Santa Rita Mine, the Serrote Mine, the overall transaction, and their valuations of the impact of the Geotechnical Event on the valuation of the Santa Rita Mine.

14. Similarly, given their roles, Loftus-Hills and Chen likely will be able to speak to material issues regarding Applicants' claims, such as Moelis's valuation of the transaction, what changes, if any, occurred to the valuation following the Geotechnical Event, and any discussion they had with representatives of Sibanye Stillwater or Sibanye Brazil regarding their true reasons for seeking to terminate the SPAs. Loftus-Hills and Chen will also likely provide testimony that will be helpful to the English Court regarding complex topics, such as Moelis's proprietary valuation methods and models which were used in valuing the transaction.

15. The evidence sought by Applicants via the three subpoenas accompanying this Application will be useful in proving Applicants' claims in the English Proceeding. A true and correct copy of the draft subpoena proposed to be directed to Moelis & Company LLC is attached hereto as **Exhibit 3.** A true and correct copy of the draft subpoena proposed to be directed to Patrick Loftus-Hills is attached hereto as **Exhibit 4.** A true and correct copy of the draft subpoena proposed to be directed to Ashley Chen is attached hereto as **Exhibit 5.**

16. In particular, document Requests 1, 2, and 3 in the form of subpoenas attached hereto and directed to Respondents seek evidence concerning Respondents' role as financial advisors to the Sibanye Entities, the Sibanye Entities' bid to purchase the Applicants' shares in the Santa Rita and Serrote Mines, and materials prepared by Respondents to facilitate the work they performed. Document Requests 4, 5, and 6 in the form of subpoenas attached hereto and directed

to Respondents seek evidence concerning the Geotechnical Event and Respondents' knowledge of it. Document Request 7 in the form of subpoenas attached hereto and directed to Respondents seeks evidence relating to the Sibanye Entities' purported termination of the SPAs. Finally, each form of subpoena seeks deposition testimony from each Respondent regarding the foregoing matters.

17. The discovery sought in the subpoenas will be useful to the court in the English Proceeding with respect to two key issues.

18. *First*, Respondents' valuation and financial advisory work for the Sibanye Entities is relevant to the Sibanye Entities' contemporaneous assessment of whether the Geotechnical Event constituted a Material Adverse Effect. I understand that, under the SPAs, an event constitutes a Material Adverse Effect only if it is "reasonably expected to be material and adverse to the business, financial condition, results of operations, the properties, assets, liabilities or operations of the Group Companies, taken as a whole. . . ." As described above, Applicants assert that the Sibanye Entities breached the SPAs because the Geotechnical Event was mere pretext and not a Material Adverse Effect. Respondents' valuations and advice after the Geotechnical Event are likely to be probative of whether the Geotechnical Event materially impacted the business prospects of the Santa Rita Mine, the combined enterprise, and the overall transaction. Therefore, Respondents' documents and testimony regarding this issue are highly relevant to Applicants' claims.

19. *Second*, Respondents' work as financial advisor to the Sibanye Entities is relevant to Applicants' claim that the Sibanye Entities' breach constitutes "wilful misconduct" under the SPAs. The SPAs limit the remedies available to Applicants for the Sibanye Entities' breach unless it was caused by the Sibanye Entities' wilful misconduct. To establish wilful misconduct under

the SPAs, Applicants allege (and therefore must show) that Sibanye Entities asserted that the Geotechnical Event was a Material Adverse Effect without genuinely believing or having any reasonable basis for believing that to be the case. As the Sibanye Entities' financial advisors, Respondents' documents and testimony regarding the transaction and its valuation are probative of whether the Sibanye Entities genuinely and/or reasonably believed the Geotechnical Event was a Material Adverse Effect. The information sought will consequently be highly relevant to Applicants' claims of wilful misconduct.

### III.   ADDITIONAL ACCOMPANYING EXHIBITS

20. According to Moelis's Form X-17A-5 filed with the SEC for the period ending December 31, 2022, a true and correct copy of which is attached hereto as **Exhibit 6**, Moelis is a financial advisory business that was incorporated as a Delaware limited liability company and maintains its principal place of business at 399 Park Avenue, 4th Floor, New York, NY 10022.

21. A true and correct copy of a page from Moelis's website indicating that its "Global Headquarters" is at its sole New York office at 399 Park Avenue, 4th Floor, New York, NY 10022 retrieved from moelis.com on June 23, 2023, is attached hereto as **Exhibit 7**.

22. A true and correct copy of a Westlaw "PeopleMap Report," showing Mr. Loftus-Hills's residence in the borough of Manhattan within New York City, New York, retrieved from Westlaw.com on June 23, 2023, is attached hereto as **Exhibit 8**.

23. A true and correct copy of a RealtyHop property records webpage, showing Mr. Loftus-Hills's residence in the borough of Manhattan within New York City, New York, retrieved from realtyhop.com on June 23, 2023, is attached hereto as **Exhibit 9**.

24. A true and correct copy of Mr. Loftus-Hills's profile on Moelis's website, showing that Mr. Loftus-Hills is employed by Moelis in "New York", and reachable at a phone number with a 212 area code, retrieved from moelis.com on June 23, 2023, is attached hereto as **Exhibit 10**.

25. A true and correct copy of Mr. Loftus-Hills's biography as a Board Member of the Australian Universities & Schools USA Foundation, stating that he lives in New York, retrieved from aususafoundation.org on June 23, 2023, is attached hereto as **Exhibit 11**.

26. A true and correct copy of a Westlaw "PeopleMap Report," showing Mr. Ashley Chen's residence in the borough of Manhattan within New York City, New York, retrieved from Westlaw.com on June 23, 2023, is attached hereto as **Exhibit 12**.

27. A true and correct copy of Mr. Chen's LinkedIn profile, which shows Mr. Chen is employed by Moelis, retrieved from linkedin.com on June 23, 2023, is attached hereto as **Exhibit 13**.

28. A true and correct copy of a scheduling order in the English Proceeding is attached hereto as **Exhibit 14**.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: June 23, 2023
New York, New York

_____
Kevin D. Benish

Kevin D. Benish (kbenish@hsgllp.com)
425 Lexington Avenue
New York, New York 10017
(646) 837-5151

*Counsel for Applicants*