**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of BM Brazil 1 Fundo de Investimento em Participações Multistratégia, BM Brazil 2 Fundo de Investimento em Participações Multistratégia, and ANRH Cooperatief U.A. for an Order Pursuant to 28 U.S.C. § 1782 Granting Leave to Obtain Discovery for Use in a Foreign Proceeding | **No. 23-mc-208 (JGLC) (GS)** |

**DECLARATION OF LORD WOLFSON KC IN SUPPORT OF LETTER MOTION TO COMPEL PRODUCTION**

I, David Wolfson, Baron Wolfson of Tredegar KC, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I refer to this Declaration as my "Third Declaration". I have previously made two Declarations in support of the applicants' *ex parte* application for an order pursuant to 28 U.S.C. §1782 granting leave to obtain discovery for use in a foreign proceeding: my "First Declaration" dated 1 September 2023 and my "Second Declaration" dated 23 June 2023. I incorporate in this Declaration all my prior statements made in my First and Second Declarations.

2. As set out in paragraph 1 of my First Declaration, I am a barrister at One Essex Court, a set of barristers' chambers located at One Essex Court, Temple, London EC4Y 9AR, United Kingdom, where I practise. I was called to the Bar of England and Wales in 1992 and became a Queen's Counsel (now King's Counsel, or "KC") in 2009. Throughout my career, I have acted in numerous cases raising issues of legal advice privilege and litigation privilege. Issues of privilege invariably arise during litigation before the English courts and advising

1

on these topics is a core part of my practice. I therefore consider that I have the relevant knowledge and expertise to opine on the matters set out in this Third Declaration.

3.   As I explained in paragraph 24 of my First Declaration, English law recognises two species of legal professional privilege:[1]

(a)   legal advice privilege, which applies to confidential communications between a client and their lawyer with the dominant purpose of giving or receiving legal advice; and

(b)   litigation privilege, which applies to communications between clients and lawyers or either of them and third parties with the dominant purpose of obtaining advice or information for conducting litigation that is ongoing or in reasonable contemplation.

4.   There are two key distinctions between these two forms of privilege:

(a)   **The involvement of third parties**: legal advice privilege can only apply to communications between a lawyer and their client. By contrast, litigation privilege can apply to communications between the lawyer or their client (or both of them) and third parties (e.g. the client's accountancy advisers).

(b)   **The time from which the privilege applies**: legal advice privilege can apply to communications created at any time, while litigation privilege can only apply to communications created when litigation is either ongoing or in reasonable contemplation.

---

[1]   English law also recognises various other forms of privilege (such as joint privilege, common interest privilege and without prejudice privilege). I do not address these other species of privilege in this Third Declaration, as I understand that Sibanye has not raised them.

5.   The essential difference between these two forms of privilege is summarised in C. Hollander, *Documentary Evidence* (14th edn, Sweet & Maxwell 2021) at §13-02 as follows:

> Legal advice privilege is narrower in ambit but can be claimed more widely. It protects communications between client and lawyer which are part of the continuum of the giving and getting of legal advice. It does not require the existence or contemplation of legal proceedings. Litigation privilege only applies where adversarial proceedings are in reasonable contemplation, but is wider in ambit. It protects communication which come into existence for the dominant purpose of gathering evidence for use in proceedings, and will include communications with third parties if they come into existence for that dominant purpose.

6.   I have been asked to address three issues in this Third Declaration, namely:

   (a)   the scope of legal advice privilege under English law in relation to communications between a lawyer, their client and a third party;

   (b)   the scope of litigation privilege under English law; and

   (c)   which party bears the burden of proving that legal advice privilege and litigation privilege apply under English law.

7.   For the purposes of this Third Declaration, I have reviewed my First and Second Declarations (Dkts. 5 & 33), and the Declaration of Luke Tolaini dated 18 August 2023 (Dkt. 24).

8.   To assist the Court, I provide copies of all the judgments and excerpts of the textbooks I refer to along with this declaration. **Exhibit A.**

9.   Except as otherwise indicated, all the facts set forth in this Third Declaration are based upon my own personal knowledge or based upon my review of relevant documents. To the extent

matters stated in this Third Declaration are statements of legal opinion, such statements represent my view of the laws of England and Wales.

10. I respectfully submit this Third Declaration in support of the Letter Motion to Compel Production.

## I.    THE SCOPE OF LEGAL ADVICE PRIVILEGE UNDER ENGLISH LAW

11. Legal advice privilege applies to confidential communications between a client and his or her lawyer created for the dominant purpose of giving or receiving legal advice.

12. To attract legal advice privilege, the communication must be between a lawyer and their client. Legal advice privilege does not apply where the communication is between the lawyer or the client (on one side of the communication) and a third party (on the other): see B. Thanki et al, *The Law of Privilege* (3rd edn, OUP 2018) at §2.04.[2]

### A.    Who is 'the client'?

13. Where the party seeking legal advice is a legal person, such as a company, the 'client' only includes those individuals within the company who are specifically authorised to give instructions to the company's lawyers (the "*Three Rivers* principle"): see the decision of the Court of Appeal in *Three Rivers District Council v Governor and Company of the Bank of England (No 5)* [2003] QB 1556 (CA). It does not include communications between the

---

[2]    See also C. Passmore, *Privilege* (4th edn, Sweet & Maxwell 2019) at §2-077: "*Advice privilege cannot protect from disclosure a communication between either the client or his lawyer and a third party. Communications with third parties are protected only when they are made in respect of litigation.*"

company's lawyers and other agents or employees of the company, who are to be equated to third parties.

14. The Court of Appeal has confirmed in subsequent cases that the holding in *Three Rivers (No 5)* remains binding as a matter of English law: *Director of the Serious Fraud Office v Eurasian Natural Resources Corpn Ltd* [2019] 1 WLR 791 at [81]; and *R (Jet2.com Ltd) v The Civil Aviation Authority* [2020] EWCA Civ 35, [2020] QB 1027 at [47].

**B.    Who is a 'lawyer'?**

15. Legal advice privilege is confined to communications between the client and professional lawyers: B. Thanki et al, *The Law of Privilege* (3rd edn, OUP 2018) at §1.46.

16. The concept of a lawyer extends only to qualified solicitors and barristers (in England and Wales) and foreign lawyers: *R (Prudential Plc) v Special Commissioner of Income Tax* [2013] UKSC 1, [2013] 2 AC 185 at [45] and [51]. In *Prudential*, the claimant argued that the concept of a legal adviser was broad enough to encompass advice given to them on tax law by their chartered accountants (PricewaterhouseCoopers LLP). A majority of the UK Supreme Court rejected that argument.

17. It follows that "*where, for example, banking or corporate finance solicitors engage external accountants to assist with an ongoing non-contentious transaction [...] the accountants' work is not privileged*": C. Passmore, *Privilege* (4th edn, Sweet & Maxwell 2019) at §2-080.[3]

---

[3]    I understand that, under U.S. law, the provision of financial information to a lawyer to facilitate the provision of legal advice is not protected by privilege; the position is the same under English law as regards legal advice privilege.  Communications between the client or their lawyer (or both of them) and finance or accountancy professionals may fall within the scope of 'litigation privilege' (a separate

18.    Similarly, H. Malek KC and Professor P. Matthews state in *Disclosure* (6th edn, Sweet & Maxwell 2023) at §11-34 that:

> The privilege only extends to the lawyer advising his own client, and a communication between the lawyer and the third party (not being the agent of either lawyer or client for the purposes of such communication) should not be not privileged under this head. Thus, if the lawyer at the client's request writes to the client's auditors to inform them of the state of the client's legal affairs (debts, titles, claims made, actual or prospective litigation), then, even if the letter should amount to advice, it may not be advice *to the client* (because the auditor is independent of the company), and hence, the original in the auditors' hands ought not to be privileged under this head.

19.    It follows that, where a lawyer or their client (or both) approach a third party (such as an accountancy expert) for non-legal information (such as commercial or financial information) that is needed or helpful to assist the lawyer and client in their understanding of the legal position, the communications with the third party cannot be subject to legal advice privilege.

20.    This is clear from the High Court's decision in *Price Waterhouse v BCCI Holdings (Luxembourg) SA* [1992] BCLC 583. In that case, the accountancy firm Price Waterhouse ("PW") had been retained to advise an internal committee within the defendant bank ("BCCI") in relation to its investigation into certain suspicious loans. PW had been asked by the committee to report to BCCI's lawyers, to enable the lawyers to give legal advice to BCCI. Following the collapse of BCCI, the Serious Fraud Office and Bank of England served notices on PW requiring it to produce documents for an inquiry into BCCI's collapse. PW wished to cooperate with the inquiry but was concerned that the documents it had provided to BCCI's lawyers might be subject to privilege. PW therefore brought proceedings

---

form of privilege, which I consider further below), but only if the communications are created for the dominant purpose of obtaining information or advice for conducting adversarial litigation that is ongoing or in reasonable contemplation.

in the High Court, seeking a ruling on whether it was precluded from providing the documents sought. The High Court held that the materials produced by PW for BCCI were not covered by legal advice privilege because PW was not acting as a legal adviser; the fact that the material produced by PW had been provided to BCCI's lawyers to enable them to give legal advice was immaterial.

21. Similarly, in *Great Atlantic Insurance Co v Home Insurance Co* [1981] 1 WLR 529, 532 and 534, the parties agreed (and the Court accepted) that legal advice privilege did not apply to an oral report given by a (non-lawyer) insurance expert whom the plaintiff had instructed to investigate defendant insurers' business. That was so, notwithstanding that the oral report had been provided to the plaintiff's lawyers to enable those lawyers to give legal advice to the plaintiff.[4]

22. I am instructed that, under US law, where a third party assists in making communications between a lawyer and their client comprehensible (for example, by explaining to the lawyer what the client's financial data means), those communications may fall within attorney client communication privilege, in the very limited situation where the third party fills a role similar to an interpreter. For the reasons explained above, there is no similar rule in English law for finance or accountancy professionals.[5] Such communications do not attract legal advice privilege.

---

[4] The holding in that case concerned a written report that had been prepared by the plaintiff's US lawyers, which was held to be *prima facie* privileged, albeit privilege had been inadvertently waived after the plaintiff's counsel had referred to the report in the course of trial.

[5] Communications with a pure translator, when the lawyer and client speak different languages, would be protected in England as a "limited waiver" (discussed further below) and as revealing the contents of underlying legal advice. It is not suggested in this case that the Respondents' role was merely to

### C.    What is 'legal advice'?

23.    The concept of 'legal advice' encompasses all communications between a lawyer and their client that are directly related to the performance of the lawyer's professional duty as legal adviser to the client in relation to the matters in which the lawyer has been instructed: *Three Rivers (No 6)* [2005] 1 AC 610 at [111] per Lord Carswell.

24.    This is not confined to the lawyer telling the client what the law is; it extends to advice as to what should "*prudently and sensibly be done in the relevant legal context*", including information passing between the lawyer and client as part of the "*continuum*" aimed at keeping both informed so that advice may be sought and given as required (the "*Balabel* continuum"): *Balabel & Anor v Air India* [1988] Ch 317, 330.

25.    Importantly, for present purposes, the *Balabel* continuum is only concerned with information passing between the client and their lawyer; it does not include information passing between the client or their lawyer (or both of them) and third parties. It follows that, where a third party provides information or advice to a client (or their lawyer) for the purpose of advising on what should prudently and sensibly be done in the relevant legal context (or to keep the client or lawyer informed so that legal advice may be sought and given in the future), this does not fall within the scope of legal advice privilege. Such a communication could only be privileged if it fell within the ambit of litigation privilege (which is considered further below).

---

translate legal advice in this way or that the financial advisor served an analogous role. As noted above, under English law, legal advice privilege does not extend to communications with finance or accountancy professionals.

26.   In other words, the concept of legal advice (as defined in *Three Rivers (No 6)* and *Balabel*) acts as a <u>limit</u> on the categories of lawyer-client communications that will attract legal advice privilege. The relatively broad ambit of the concept of legal advice does not mean that communications <u>with third parties</u> can attract legal advice privilege simply because they would have fallen within the definition of legal advice *if* they had been communications between a lawyer and their client (rather than between a lawyer or/and their client and a third party).

### D.    Confidentiality

27.   A communication can only attract legal advice privilege if it is confidential. If there is no confidentiality in the communication, or confidentiality is lost (e.g. because the document is made public or voluntarily provided to third parties who do not owe duties of confidence in relation to it) the document will not be, or will cease to be, privileged. The extent to which dissemination of a document results in confidence being lost is a matter of fact and degree: *Mohammed v Ministry of Defence* [2013] EWHC 4478 (QB) at [19] per Leggatt J (as he then was).[6]

28.   Where the only parties to the communication are the client and their lawyer, the requirement of confidentiality will typically present no difficulties. That is because, in the normal course, communications between a lawyer and their client are presumed to be confidential: *Minter v Priest* [1930] AC 558, at 581 per Lord Atkin.

---

[6]    He was subsequently appointed as a judge of the UK Supreme Court in April 2020.

29. If the communication involves a third party (in addition to the client and their lawyer), then, depending on the facts, there may be no confidentiality in the communication, and it may not attract legal advice privilege. Whether this is the case will depend on both:

(a) whether the third party received the communication subject to an express or implied duty of confidentiality (in which case, there may only be a 'limited waiver' of privilege in the document, and the third party may be obliged to assert the client's privilege and resist production); and

(b) whether the communication was created (looking at the communication in isolation as one between the lawyer or client and the third party, and disregarding any other recipients) for the dominant purpose of giving or receiving legal advice. If the dominant purpose of the communication was not to seek or give legal advice, but rather the dominant (or equal purpose) of the communication was to seek or give commercial information (even if helpful to the provision of legal advice), the communication will not be privileged, even if it is confidential.

30. I address these two issues further below.

**E.    Limited Waiver**

31. If the client discloses a document attracting legal advice privilege to a third party in circumstances imposing a duty on the third party to keep the document confidential as against the rest of the world, the document will remain privileged as between the client or the third party and the rest of the world: neither the client nor the third party can be compelled to produce the document in legal proceedings, and the third party is obliged to assert the client's privilege. This is known as the principle of 'limited waiver'.

32.   The principle of 'limited waiver' was considered by the Court of Appeal in *Gotha City v Sotheby's & Anor* [1998] 1 WLR 114. In that case, the second defendant had acquired a 17th century painting, which it wished to sell through the auction house Sotheby's. Before any litigation was in contemplation, the seller had obtained legal advice regarding the sale from the law firm Herbert Smith and had then sent a copy of that advice to Sotheby's. Sotheby's also sat in on a meeting between the seller and Herbert Smith, which was recorded in an attendance note.

33.   The plaintiff, who claimed to be the true owner of the picture, sought inspection of the advice and attendance note on the basis that any legal advice privilege in those documents had been waived as a result of them being provided to Sotheby's (a third party). The Court of Appeal held that there was no waiver of privilege because the documents had been provided to Sotheby's subject to an implied duty of confidentiality: see page 122 of the report.

34.   The principle of limited waiver was also applied in *USP Strategies & Anor v London General Holdings Ltd & Ors* [2004] EWHC 373 (Ch). In that case, the first defendant ("LGH") had obtained legal advice, which it then passed on to Powerhouse (a third party) for commercial reasons. One of the questions for the Court was whether legal advice privilege in the advice was thereby waived. The English High Court held that there was no waiver of privilege in the original advice or of the copy of the advice in the hands of Powerhouse, on the basis that (i) the copy of the advice in Powerhouse's hands evidenced the contents of the original advice, which was subject to legal professional privilege, and (ii) the document had been provided to Powerhouse in confidence (relying on the holding in *Gotha City*): [20]-[21].

35. The correctness of this decision has been doubted by the authors of one of the leading textbooks on disclosure in England and Wales (H. Malek KC and Professor P. Matthews, *Disclosure* (6th edn, Sweet & Maxwell 2023) at §11-35), who note:

> The judge considered that the copy supplied of the legal advice was merely evidence of the original advice. Yet in context Longmore LJ in referring to evidence of privileged communications was surely referring to records made of advice to be retained by the lawyer or his client. He could not have been referring to the case where a *fresh* copy of the advice was made for the purpose of supply to a third party, informing him of its contents. The communication to the third party was, ex hypothesi, not made for a privileged purpose, and is hence not privileged.

36. The principle of 'limited waiver' ensures that legal advice privilege which applies to a lawyer's advice provided outside the presence of a third party is preserved, notwithstanding the limited disclosure of that same advice to a third party. The principle of limited waiver does not, however, mean that *other* communications with a third party (e.g. in which the third party is asked for or provides accountancy or financial advice or information for the purposes of preparing the legal advice, or in light of the legal advice) will be privileged: see paragraphs 20 and 21 above.

37. It will be apparent from the above that the cases on 'limited waiver' typically involve (i) a communication between a lawyer and their client, which is created for the purpose of obtaining or receiving legal advice; which is then (ii) transmitted to a third party subject to a duty of confidentiality for the purpose of relaying that advice to the third party.

38. Where there is a simultaneous communication between all three of a lawyer, their client and a third party, the position is more complicated, and it is necessary to consider what the dominant purpose of involving the third party in the communication was. Where the dominant purpose of copying the third party is not merely to inform the third party of what

a lawyer has advised (i.e. a limited waiver), but is also simultaneously to seek the third party's input (e.g. commercial or accountancy advice) in relation to questions raised in the email, legal advice privilege will not apply. This is clear from the decisions discussed above, and also from the Court of Appeal's decision in *Jet2*, which I consider in further detail below.

### F.    The dominant purpose test

39.    To attract legal advice privilege, a communication must have been created for the dominant purpose of giving or receiving legal advice: *R (Jet2.com Ltd) v The Civil Aviation Authority* [2020] EWCA Civ 35, [2020] QB 1027 at [67] and [100].

40.    Where a document is created for mixed purposes of equal weight, one of which would attract legal advice privilege (or litigation privilege, as the case may be) and another of which does not, the document will not be privileged. In English law, this test has previously been applied to litigation privilege and, following *Jet2*, now also applies to legal advice privilege.

41.    For example, in *Waugh v British Railways Board* [1980] AC 521, the Judicial Committee of the House of Lords[7] considered whether an internal inquiry report prepared by the Railway Inspectorate following a rail accident was subject to legal advice privilege. Applying the dominant purpose test, the Court held that the report was not privileged because it had been prepared for two purposes of equal weight: (i) operational and safety purposes; and (ii) the purpose of obtaining legal advice in anticipation of litigation.[8] Similarly, if a communication

---

[7]    Then the UK's highest court of appeal. The Judicial Committee of the House of Lords was abolished and replaced by the creation of the UK Supreme Court in 2009.

[8]

seeks legal advice, but has as an equal purpose of seeking financial or business advice from a third-party advisor, it will not be subject to legal advice privilege.

42. Equally, if a communication has a non-privileged purpose, such as obtaining information from a third-party to inform legal advice to be given, the communication will not be subject to legal advice privilege (even if the lawyer and/or client are party to the communication, and even if the ultimate purpose of obtaining the information from the third party is to enable the lawyer to provide legal advice to the client: see paragraph 20 to 21 above).

43. When ascertaining the dominant purpose of a communication over which privilege is claimed, the court must consider all the evidence and look to substance over form. Provisos in documents (e.g. headers or subject lines in an email stating that the communication is 'privileged and confidential') or declarations in witness statements are not determinative: see the decision of the Court of Appeal in *Victorygame Ltd v Ahuja Investments Ltd* [2021] EWCA Civ 993 at [48] and the High Court in *Property Alliance Group Ltd v Royal Bank of Scotland plc (No 3)* [2015] EWHC 3341 (Ch) at [31]-[33].

44. If a communication is sent to multiple recipients, the dominant purpose test must be applied in relation to each recipient in isolation. For example, if an email is sent by a lawyer to two addressees (one being the client, the other being a third party), the court should analyse that email as two distinct communications: the lawyer-client email, and the lawyer-third party email. Each is a distinct communication, and each must meet the dominant purpose test independently in order to remain privileged. If the purpose of including the third party was not to provide or obtain legal advice, then the communication (viewed in isolation as a

14

communication between the lawyer and/or their client and the third party) will generally not be subject to legal advice privilege.

45. This approach was established by the Court of Appeal in the *Jet 2* case. In that case, the Civil Aviation Authority ("CAA") had issued a press release criticising various airlines (including the claimant, Jet 2) for not having signed up to a voluntary industry alternative dispute resolution scheme. When the CAA leaked their correspondence with Jet 2 to the press, Jet 2 sought judicial review of the CAA's decisions to issue the press release and leak the correspondence. During the judicial review claim, Jet 2 applied for disclosure (i.e. discovery) of various documents from the CAA, including all drafts of the CAA's letter and records of any discussions containing those drafts.

46. The documents sought included emails involving both the CAA's in-house lawyer and other (non-legal) advisers (who, applying the *Three Rivers* principle, were not the 'client' and stood in the same position as third parties). The first instance judge nonetheless ordered their disclosure, and this decision was unanimously upheld by the Court of Appeal, requiring their disclosure. In its judgment, the Court of Appeal approved the following principles:

(a) To attract legal advice privilege, a communication must be created for the dominant purpose of giving or receiving legal advice. The fact that the communication is sent or received by a lawyer is not determinative of whether it attracts legal advice privilege. Even if the dominant purpose of the lawyer's retainer (or his "dominant role") is to give legal advice, that is not conclusive of whether legal advice privilege applies to a particular communication between lawyer and client: [67] and [100(i)].

15

(b)  In respect of a multi-addressee email sent simultaneously to various individuals for their advice/comments, including a lawyer for his or her input, the purpose(s) of the communication must be identified. If the dominant purpose is to set out matters on which the lawyer's advice is sought (and the email is sent by the 'client', i.e. someone authorised to give instructions to the company's lawyers per *Three Rivers*) that communication will be covered by legal advice privilege. However, if the dominant purpose is to obtain the non-legal input of the non-lawyer addressees (including, e.g., accountancy input for the purpose of better informing the lawyer about the matters on which they have been asked to advise), then it will not be privileged, even if a subsidiary purpose is simultaneously to obtain legal advice from the lawyer addressee: [100(ii)].

(c)  The response from the lawyer, if (but only if) it contains legal advice, will almost certainly be privileged, even if it is copied to more than one addressee: [100(iii)].

(d)  Multi-addressee communications should be considered as separate bilateral communications between the sender and each recipient: [100(iv)].

(e)  The court should consider whether, if the email were sent to the lawyer alone, it would have been privileged. If not, then the question of whether any of the other emails are privileged does not arise. If yes, then the question arises as to whether the email as sent to the non-lawyers is privileged because (e.g.) the dominant purpose was to obtain instructions or disseminate legal advice: [100(v)].

(f)  Where there is a multi-addressee email seeking both legal advice and non-legal (e.g. commercial) advice or input, it should be treated as a set of duplicate parallel emails

16

between the sender and each recipient. Viewed in this way, the communications to and from the lawyer will generally be privileged (if their dominant purpose is to give or receive legal advice). By contrast, the communications to and from (non-lawyer) third parties will generally not be privileged because (save for a situation where the non-lawyer is CC'd solely to inform them of the lawyer's advice) those communications will not have the dominant purpose of obtaining legal advice: [100(vi)].

(g)    Where a communication might realistically disclose legal advice (in the sense of there being a realistic possibility of it disclosing such advice), then that communication will be privileged: [100(vii)].

(h)    The same principles apply to meetings (including records of meetings) attended by non-lawyers and lawyers at which commercial matters are discussed with the lawyer adding legal advice and input if required. Legal advice requested and given at such a meeting would be privileged, but the mere presence of a lawyer (perhaps on the off chance that their legal input might be required) is insufficient to render the whole meeting the subject of legal advice privilege so that none of its contents (including any notes, minutes or records of the meeting) are disclosable. If the dominant purpose of the meeting is to obtain legal advice (or, subject to the *Three Rivers* principle, to settle instructions to a lawyer), unless anything is said outside that legal context, the contents of the meeting will be privileged. If the dominant purpose of the discussions is commercial or otherwise non-legal, then the meeting and its contents will not generally be privileged; although any legal advice sought or given within the meeting may be. It is likely that, in either case, where not inextricably intermingled, the non-privileged part will be severable (and, on disclosure, redactable): [100(viii)].

17

**G.    Conclusion on legal advice privilege and third parties**

47.    Drawing these threads together, the position with respect to legal advice privilege as regards communications passing between a lawyer, their client and a third party simultaneously is in my opinion as follows:

(a)    The fact that the communication was sent by, or to, or copying, a lawyer does not, without more, mean that it is subject to legal advice privilege.

(b)    Nor does fact that the client and lawyer are both on an email mean, without more, that it is subject to legal advice privilege.

(c)    Insofar as the communication actually contains legal advice, or evidences the lawyer's instructions, and is confidential, the third party may resist disclosure on the ground of limited waiver.

(d)    Insofar as the communication contains non-legal (e.g. commercial or accountancy) advice to be given by the third party, or records the matters on which that non-legal advice is sought, there is no legal advice privilege in the communication, even if the information is being sought only for the purpose of seeking or giving legal advice.

(e)    If a communication is created for a mix of purposes (i) and (ii), the document should be treated as two distinct bilateral communications. If the dominant purpose of the communication with the third party is to seek or obtain non-legal information (e.g. commercial or accountancy advice), the document should be disclosed, subject to any redactions of the parts evidencing the lawyer's advice or matters in respect of which

18

legal advice has been sought. That is so even if the commercial information was sought or provided to enable the lawyer to provide legal advice to the client.

48.    Accordingly:

(a)    If the client sends an email seeking both legal advice from their lawyer and financial advice from their accountant, the email will not be covered by legal advice privilege (unless the questions on which legal advice is sought are different from the questions on which the accountancy advice is sought, in which case the distinct legal queries should be redacted and the document should be produced with redactions applied).

(b)    If the lawyer replies with legal advice, that email will be subject to legal advice privilege (even if it is copied to the third party, due to the principle of 'limited waiver').

(c)    If the third party replies with non-legal advice or information (e.g. financial or accountancy advice), that communication will not be subject to legal advice privilege, even if it is copied or sent directly to the lawyer, save to the extent that the non-legal information merely repeats or otherwise discloses the contents of the legal advice sought or given (in which case redaction may not be possible).

49.    The approach of redacting the parts of a document that are subject to legal advice privilege, while leaving non-privileged parts unredacted, is commonly followed in English proceedings: see, for example, *Wiseman v The Commissioners for Her Majesty's Revenue & Customs* [2022] UKFTT 00075 (TC) at [22], citing *Jet2* at [100(viii)].

## II.    THE SCOPE OF LITIGATION PRIVILEGE UNDER ENGLISH LAW

50.    Confidential communications between a client or/and their lawyer (on one side of the communication) and third parties (on the other) may be protected by litigation privilege if certain conditions are met.

51.    To attract litigation privilege, the communication must have been created (1) for the dominant purpose of obtaining information or advice for conducting (2) adversarial litigation that has been commenced or is in reasonable contemplation: see the Court of Appeal's decision in *WH Holding Ltd v E20 Stadium LLP* [2018] EWCA Civ 2652 at [15].

52.    The dominant purpose is the same as applies in relation to legal advice privilege (considered in paragraphs 39 to 44 above). An illustration of the problem of mixed purposes in the context of litigation privilege is provided by the Commercial Court's decision in *Sotheby's v Mark Weiss Ltd* [2018] EWHC 3179 (Comm), to which I referred in footnote 6 of my First Declaration.

53.    The claimant in that case (the auction house Sotheby's) had, on behalf of the defendant seller, sold a painting (purportedly an original Frans Hals) to a third-party buyer for US$ 10 million. It was a term of the contract between Sotheby's and the buyer that if it subsequently transpired that the painting was counterfeit, Sotheby's would rescind the sale and return the purchase price. The buyer obtained a report from an expert suggesting that the painting was a forgery and sought the return of the purchase price form Sotheby's.

54.    Sotheby's informed the defendant of the buyer's concerns over authenticity but made clear that they had not yet reached a final view. Sotheby's then commissioned its own report from a separate art expert (who reviewed the buyer's expert's report and also concluded that the

20

painting was counterfeit). Sotheby's therefore rescinded the sale and returned the purchase price to the buyer.

55.    Sotheby's then brought proceedings to rescind its contract with the defendant seller. In those proceedings, the defendant sought inspection of Sotheby's communications with the two art experts. Sotheby's resisted the application on the ground that the communications were subject to litigation privilege. Mr Justice Teare held that the communications were not subject to litigation privilege because they had been prepared for the dual purposes of (i) informing a commercial decision as to whether the paining was a forgery and, if so, whether to return the purchase price to the buyer, and (ii) to conduct anticipated litigation against the seller: [18]. The second purpose could not be said to be the dominant purpose, and so litigation privilege did not apply: [23].

56.    As I explained in my First Declaration, I understand that at least one important aspect of the Respondents' work was to provide the Sibayne Entities with financial and commercial advice for the purposes of determining the antecedent commercial question of whether to terminate the transactions. If that was the dominant purpose of the communications between the Sibayne Entities and the Respondents (or even if this purpose was equal in weight to the purpose of obtaining information or advice for conducting reasonably contemplated litigation), litigation privilege will not apply.

57.    The principles that apply under English law when determining whether litigation was in reasonable anticipation are, in summary, as follows:

(a)    The authorities express the test in various ways (e.g. litigation that is "anticipated or pending", "in contemplation", "reasonably in prospect" or "in reasonable prospect").

21

(b)     The various formulations all mean the same thing: litigation with a "*particular person or class of persons*" must be a "*real likelihood*", as opposed to a "*mere possibility*": *Rawlinson & Hunter Trustees SA v Akers* [2014] EWCA Civ 136, [2014] 4 All ER 627 at [24]. A "*distinct possibility that sooner or later someone might make a claim*" is not enough: *USA v Philip Morris Inc* [2004] EWCA Civ 330 at [68].

(c)     The question is to be asked from the perspective of the party asserting the privilege, rather than the opposing party: *Plummers v Debenhams* [1986] BCLC 447, 457.

**III.     THE BURDEN OF PROOF WHERE PRIVILEGE IS CLAIMED**

58.     If there is a dispute about whether a communication attracts legal advice privilege or litigation privilege, the burden of proving that the privilege applies rests on the party asserting the privilege.

59.     The principles that apply under English law when a claim to privilege is disputed were summarised by Mr Justice Hamblen (as he then was)[9] in *Starbev GP Ltd v Interbrew Central European Holding BV* [2013] EWHC 4038 (Comm) at [11], in a passage that was recently cited with approval by the Court of Appeal in *Al Sadeq v Dechert LLP & Ors* [2024] EWCA Civ 28 at [185]:

> (1) The burden of proof is on the party claiming privilege to establish it […]
>
> (2) An assertion of privilege and a statement of the purpose of the communication over which privilege is claimed in a witness statement are not determinative and are evidence of a fact which may require to be independently proved. The court will scrutinise carefully how the claim to privilege is made out and the witness statements should be as specific as possible […]

---

[9]     He was subsequently appointed as a judge of the UK Supreme Court in January 2020.

(3) The party claiming privilege must establish that litigation was reasonably contemplated or anticipated. It is not sufficient to show that there is a mere possibility of litigation, or that there was a distinct possibility that someone might at some stage bring proceedings, or a general apprehension of future litigation […]

(4) It is not enough for a party to show that proceedings were reasonably anticipated or in contemplation; the party must also show that the relevant communications were for the dominant purpose of either (i) enabling legal advice to be sought or given, and/or (ii) seeking or obtaining evidence or information to be used in or in connection with such anticipated or contemplated proceedings. Where communications may have taken place for a number of purposes, it is incumbent on the party claiming privilege to establish that the dominant purpose was litigation. If there is another purpose, this test will not be satisfied […]

*****

60.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief, and that the statements of English law stated herein are my honestly held belief as to the state of the law.

Executed on April 10, 2024

London, England

_____

Lord (David) Wolfson, KC

23